PRN PHARMACEUTICALS, INC., d/b/a Kenmore RX Center, Pinewoods Pharmacy, Inc., Buffalo Pharamacies, Inc., Prescription Laboratory Pharmacy, The Drugg Shoppe, Inc., Peterson Drug Company of Newfane, N.Y., Okie's of Newfane, Inc., Owl Drugs, Paul Groat, d/b/a Medicine Shoppe, Plaintiffs,

v.

MANAGED PRESCRIPTION NETWORK, INC., d/b/a Columbia Pharmacy Solutions, Defendant.

No. 96–CV–478C.

United States District Court,
W.D. New York.

Aug. 5, 1996.

Joseph A. Fiorella, Buffalo, New York, for Plaintiffs.

Phillips, Lytle, Hitchcock, Blaine & Huber (John J. Hurley, of counsel), Buffalo, New York, for Defendant.

### BACKGROUND

CURTIN, District Judge.

Plaintiffs are independent pharmacies that provide prescription medications to the general public. Managed Prescription Network

(MPN) provides discounted prescription drugs to members of health maintenance organizations (HMOs) through contracts with pharmacies such as the plaintiffs. MPN does business with the pharmacies under the name Columbia Pharmacy Solutions.

MPN is free to select participating pharmacies based on their ability to provide quality services to HMO members at the lowest cost. That right is limited only by an agreement with HMOs that participating pharmacies must be within certain distances of each HMO member's home or business address. These distances can be no more than a one-mile radius within urban areas, a three-mile radius in suburban areas and a seven-mile radius in rural areas. Item 5, p. 4.

Under the terms of the Participating Pharmacy Agreement, the contract between MPN and the plaintiff pharmacies, MPN, doing business as Columbia Pharmacy Solutions, "reserves the right to terminate the Agreement upon fifteen (15) days prior written notice to the PARTICIPATING PHARMACY," except that it may terminate without notice under certain circumstances. Item 4, Ex. C., ¶ 10. The agreement also requires that any dispute between the parties be submitted to arbitration. *Id.,* ¶ 17. There is no record that either party has filed a demand for arbitration.

MPN terminated the agreement by letter dated June 14, 1996, informing the 27 pharmacies that they would be eliminated from the MPN network on June 30, 1996. Plaintiffs claim they did not receive the letters until June 20, 1996. Consequently, MPN extended the termination date to July 15, 1996.

Plaintiffs then commenced the present action in New York State Supreme Court on June 27, 1996. Plaintiffs were granted an *ex parte* temporary restraining order against defendant, prohibiting the termination of the contract. Defendant removed the case to this court under its diversity jurisdiction by Notice of Removal dated July 18, 1996. Plaintiffs now move to remand the case to state court, or in the alternative, for a preliminary injunction barring the termination of the contract pending the decision of an arbitrator.

## DISCUSSION

### I. This court has jurisdiction because it is not "clear to a legal certainty" that the jurisdictional minimum cannot be recovered by the plaintiffs.

Diversity jurisdiction is conferred by 28 U.S.C. § 1332. The statute requires that there be complete diversity between plaintiffs and defendants, and that plaintiffs must each exceed the jurisdictional limit of $50,-000, exclusive of costs and interests. While there is no question that the parties are diverse, plaintiffs argue that they have not each pled the $50,000 jurisdictional minimum.

■ In exercising removal jurisdiction, a difficult question is presented "where the amount in controversy is not present from the plaintiff's viewpoint but is from that of the defendant. A sound doctrine is that the amount-in-controversy requirement may be established by using either the plaintiff's or the defendant's point of view, at least for removal purposes." 1A MOORE'S FEDERAL PRACTICE ¶ 0.157[6], p. 132 (2d ed. 1996). In such cases, remand is inappropriate unless it is "clear to a legal certainty" that the jurisdictional amount could not be recovered. 1 MOORE'S FEDERAL PRACTICE ¶ 0.92[1]. pp. 830–31 (citing *St. Paul Mercury Indemnity Company v. Red Cab Co.* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)).

Plaintiff cites *Tongkook America, Inc. v. Shipton Sportswear,* 14 F.3d 781, 785 (2d Cir.1994) for the proposition that "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."

The distinction between the *Tongkook* and *St. Paul Mercury* standards is that *Tongkook* did not involve a question of removal by the defendant. Instead, the plaintiff in *Tongkook* alleged an amount in controversy exceeding the jurisdictional minimum, but in discovery it became clear that the actual amount in controversy was less, and defendant moved to dismiss for lack of subject matter jurisdiction. This factual distinction

is important, because the *Tongkook* court stated that the plaintiff "'should know whether [the] claim is within the statutory amount.'" *Tongkook* 14 F.3d at 784 (quoting *St. Paul Mercury*, 303 U.S. at 290, 58 S.Ct. at 591). Whereas the *St. Paul Mercury* standard acknowledges implicitly that a defendant invoking federal jurisdiction will often not be certain of the exact value of the plaintiff's claim, and therefore must only show that an amount below the jurisdictional minimum is not a "legal certainty."

Moreover, faced with the issue of removal by the defendant, courts in the Second Circuit have applied the legal certainty standard. For example, in *Cygielman v. Cunard Line Ltd.*, 890 F.Supp. 305, 306 (S.D.N.Y. 1995), the court observed that when a plaintiff finds himself "hoist by his own petard into a forum not to his liking," dismissal is justified only when it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (citing *St. Paul Mercury*, 303 U.S. 283, 58 S.Ct. 586).

■ Applying the legal certainty standard, the court agrees with the defendant that the plaintiff expressing the lowest amount in payments between August 1995 and May 1996—some $32,000 over 10 months—could easily generate an amount in controversy in excess of the jurisdictional minimum between the date of termination of the contract and the time a damage award is made if a breach of contract is found. Hence, considering plaintiffs' affidavit (Item 2, Ex. B.), it is not clear to a legal certainty that the jurisdictional amount cannot be recovered, and dismissal is inappropriate. Plaintiff's motion to remand is denied.

## II. Plaintiffs have not demonstrated irreparable injury.

Because this action is brought pursuant to the court's diversity jurisdiction, the court is bound to apply New York substantive law. The general rule in New York is that for a preliminary injunction to issue pursuant to CPLR § 6301, the party seeking the injunctive order must show "probability of success, danger of irreparable injury in the absence of an injunction, and a balance of equities in [the applicant's] favor." *Aetna Insurance Company v. Capasso*, 75 N.Y.2d 860, 552 N.Y.S.2d 918, 919, 552 N.E.2d 166, 167 (1990). Where the gravamen of an action is the allegedly improper termination of an agreement giving rise to a breach of contract, there is no irreparable injury if the plaintiff could be fully compensated by money damages. *Haulage Enterprises Corp. v. Hempstead Resources Recovery Corp.* 74 A.D.2d 863, 426 N.Y.S.2d 52 (2d Dep't 1980).

Plaintiffs argue that the loss of customers resulting from termination of the contract will threaten their livelihood as independent pharmacists. Item 6, p. 8. They also argue that their customers will be irreparably harmed because some plaintiffs will not be able to get new prescriptions on short notice. The plaintiffs argue that the lives of some customers may be endangered. *Id.*

Plaintiffs' loss of customers is not an irreparable injury, because any loss would be compensable through money damages. In addition, the worst situation faced by customers in an emergency would be that they would have to pay once for their prescription at a non-MPN pharmacy. By the next refill, the customer would presumably have had the opportunity to locate a participating pharmacy and have their prescription filled there. In addition, the fact that the new MPN pharmacy may not be as convenient as the terminated pharmacy does not amount to an irreparable injury: given that the agreement between MPN and the pharmacies can be terminated at any time, there is no long-term guarantee that customers will be able to have their prescriptions filled at the most convenient location. Finally, the agreement between MPN and the HMOs require that a participating pharmacy be within prescribed distances from members' homes, so that no HMO member will be critically inconvenienced. Plaintiff has made no showing that any member will not have a pharmacy within the designated distance.

The court notes that it does not consider plaintiffs' arguments that the contract was wrongfully terminated. If plaintiffs are correct in their breach of contract theory, their remedy is before the arbitrator.

## CONCLUSION

For the foregoing reasons, the court finds that it has subject matter jurisdiction over the present action. Plaintiffs' motion for a preliminary injunction is denied.

So ordered.